In the Matter of JOEL HAMLET et al., Respondents, v PATRICK HOOKER, as Commissioner of Agriculture and Markets, et al., Appellants. [914 NYS2d 741]—

Lahtinen, J. Appeal from an order of the Supreme Court (Cahill, J.), entered March 3, 2010, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Commissioner of Agriculture and Markets denying petitioners' claims for a distribution from the agricultural producers security fund.

Petitioners are agricultural producers who sold farm products to Lenny Perry's Produce, a licensed farm products dealer. Perry's Produce failed to make payments to numerous producers, resulting in respondent Department of Agriculture and Markets

---

notifying producers in early November 2008 that they may be eligible for payments from Perry's Produce's statutorily required bond as well as from the agricultural producers security fund. Petitioners submitted a claim pursuant to Agriculture and Markets Law § 250-b for in excess of $42,000 relating to 56 transactions with Perry's Produce. Respondent Commissioner of Agriculture and Markets denied petitioners' claim in its entirety after determining that petitioners had failed to comply with the time-related parameters set forth in Agriculture and Markets Law § 250-b (1) (b) (ii) and (iii). Petitioners commenced the current proceeding and Supreme Court partially granted their application, finding that the Commissioner erred in his interpretation and application of the statute as to 54 of the 56 transactions. Respondents appeal.

Agriculture and Markets Law article 20 was enacted to, among other things, "safeguard the producers and dealers of this state in certain marketing transactions relative to . . . farm products" (Agriculture and Markets Law § 244 [1]). As part of the protection provided by the statute, dealers are required to file a bond or letter of credit and pay a licensing fee into a security fund (see Agriculture and Markets Law §§ 248, 250). Producers are required by Agriculture and Markets Law § 250-b (1) to notify the Commissioner when dealers fail to provide "prompt payment" as defined in Agriculture and Markets Law § 245 (3). When the Commissioner has reason to believe that a dealer has defaulted in making full and prompt payments to producers, the Commissioner gives notice to producers to file claims within 30 days (see Agriculture and Markets Law § 250-b [1] [b]). The Commissioner then examines the claims and determines the amount due each producer.

The statute further sets forth situations where the Commissioner must deny a claim. The situations relevant here include that "[n]o claims . . . shall be allowed for sales of farm products . . . (ii) that occurred more than [120] days after the earliest transaction between the producer and the dealer that remains unpaid as of the date the claim is filed, whether or not that earliest unpaid transaction is included in the claim; or (iii) where a claim is submitted more than [365] days after sale and delivery" (Agriculture and Markets Law § 250-b [1] [b]). This statute was amended in 2002 (see L 2002, ch 344) and 1999 (see L 1999, ch 288) to expedite claim procedures and liberalize the time constraints for compensable claims to better reflect the realities of the typical business relationship between producers and dealers (see Assembly Mem in Support, 2002 McKinney's Session Laws of NY, at 1908-1909; Senate Mem in Support,

1999 McKinney's Session Laws of NY, at 1726-1727). The arbitrary and capricious standard of review applies to the Commissioner's determination (see *Matter of Atwater v McGuire*, 227 AD2d 763, 764 n 2 [1996]).

Here, the Department received a claim dated November 18, 2008 from petitioners seeking payments for transactions they had with Perry's Produce between June 28, 2008 and October 19, 2008. During a routine audit of the claim, petitioners notified the Department that, at about the same time they had received the notice of default regarding Perry's Produce from the Department, they had also received two checks from Perry's Produce in the amounts of $712 and $776.75. Although the checks were dated in November 2007, petitioners maintained that the checks were not received by them until October 2008 or November 2008 and that they had not attempted to negotiate them. They submitted an amendment to their claim for two transactions with Perry's Produce from September 2007, which were for the same amounts as the two November 2007 checks.

The Commissioner denied petitioners' claim finding that the 54 transactions occurring between June 28, 2008 and October 19, 2008 were precluded because they occurred more than 120 days after the earliest transaction (i.e., September 2007) that remained unpaid (see Agriculture and Markets Law § 250-b [1] [b] [ii]). The claim on the remaining two transactions was denied since they were submitted more than 365 days after sale and delivery (see Agriculture and Markets Law § 250-b [1] [b] [iii]). While Supreme Court upheld denial of the two transactions from September 2007 because "sale and delivery" had occurred more than 365 days before the claim was submitted, it reversed as to the other 54 transactions holding that the September 2007 transactions were not "unpaid" since the two November 2007 checks (received in October 2008 or November 2008) constituted conditional payment as of the time that petitioners filed their claim, and there was no proof that the checks had been "dishonored" as characterized by the Commissioner.

In light of the deferential standard of review, we are constrained to reverse that part of the judgment as partially granted petitioners' application. Petitioners' position suffers dissonance in that they urge, on the one hand, that the November 2007 checks—purportedly received 13 or 14 months after the September 2007 transactions—constituted conditional payment such that their claims are preserved and yet, on the other hand, they submitted claims for those very same transactions since they were, in fact, unpaid. The Commissioner's written decision, while perhaps not a model of clarity, does state

that payment for the 54 transactions was denied because they occurred more than 120 days after "unpaid" transactions, and there is record support for this determination. Later in the relevant paragraph of the decision, when ostensibly discussing the denial of the two transactions where sale and delivery occurred over 365 days earlier, the Commissioner characterizes the November 2007 checks as having been "dishonored." While there is no evidence that the checks were dishonored at a bank, petitioners nevertheless treated the checks as bad by submitting claims for the amounts for which the checks purported to compensate. And, under these circumstances, the Commissioner's determination that the September 2007 transactions were unpaid at the time the claim was submitted in November 2008 is not arbitrary. Although, as we noted earlier, the statute has been amended in recent years to loosen the pertinent time constraints, statutory provisions remain that require producers not to allow the protracted languishing of unpaid transactions without risking denial of a claim against the security fund (*see* Agriculture and Markets Law § 245 [3]; § 250-b [1] [a], [b]). Unfortunately, petitioners permitted such delay to occur and, accordingly, the Commissioner's determination to deny their claim must be upheld under the applicable arbitrary and capricious standard of review.

Peters, J.P., Rose, Kavanagh and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted the petition; petition dismissed in its entirety; and, as so modified, affirmed.